# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

SCA EFiled: Apr 24 2026
11:53AM EDT
Transaction ID 79299729

**John Moore,**
**Claimant Below, Petitioner**

**v.)**     **No. 25-822**     (JCN: 2024013637)
                                (ICA No. 25-ICA-137)

**United Coal Company, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner John Moore appeals the September 30, 2025, decision of the Intermediate Court of Appeals of West Virginia ("ICA"). *See Moore v. United Coal Co., LLC*, No. 25-ICA-137, 2025 WL 2781461 (W. Va. Ct. App. Sept. 30, 2025) (memorandum decision). Respondent United Coal Company, LLC filed a timely response.[1] The issue on appeal is whether the ICA erred in affirming the March 7, 2025, decision of the West Virginia Workers' Compensation Board of Review, which affirmed the claim administrator's December 7, 2023, order rejecting the claim for carpal tunnel syndrome ("CTS") as non-compensable. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the ICA's decision is appropriate. *See* W. Va. R. App. P. 21.

The claimant argues that the Board of Review clearly erred in affirming the rejection of the claim and that the evidence establishes that the claimant's CTS resulted from his employment as an underground coal miner. The claimant argues that the Board of Review erred in finding the report of Austin Nabet, D.O., more persuasive than the report of Michael Kominsky, D.C., due to Dr. Nabet's discussion of the claimant's diabetes. The claimant argues that his diabetes was not severe enough for the Board of Review to disregard the claimant's years of working with numerous, very heavy high-impact tools that required him to use a tight grip and subjected him to extensive vibrations while having to bend and rotate his wrists. Therefore, the claimant argues that the Board of Review and the ICA should be reversed, and the claim held compensable for CTS. The employer counters by arguing that the Board of Review's findings were not clearly wrong. The employer argues that the evidence showed that the claimant's CTS is not an occupational disease developed in the course of and resulting from his employment pursuant to West Virginia

---

[1] The claimant appears by counsel Reginald D. Henry and Lori J. Withrow, and the employer appears by counsel H. Dill Battle III.

Code § 23-4-1(f). Therefore, the employer argues that the ICA properly deferred to the Board of Review's weighing of the evidence.

In *Moore*, the ICA stated that "Dr. Nabet's report addresses the significance of [the claimant]'s diabetes as documented in the medical records and is more complete [than Dr. Kominsky's report] in addressing compensability." 2025 WL 2781461, at *3. The ICA also noted that West Virginia Code of State Rules § 85-20-41.4 includes diabetes as among those "[m]edical conditions [that] frequently produce or contribute to CTS." *Id.* n.2.

This Court reviews questions of law de novo, while we accord deference to the Board of Review's findings of fact unless the findings are clearly wrong. Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024). Upon consideration of the record and briefs, we find no reversible error and therefore summarily affirm. *See* W. Va. R. App. P. 21(c).

Affirmed.

**ISSUED: April 24, 2026**

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing

**DISSENTING:**

Justice William R. Wooton

**DISQUALIFIED:**

Justice Gerald M. Titus III

Wooton, J., dissenting:

I would have held Petitioner John Moore's claim compensable because the medical evidence demonstrates that his bilateral carpal tunnel syndrome ("CTS") arose in the course of and resulting from his employment.

In order for a workers' compensation claim to be held compensable, three elements must coexist: (1) a personal injury, (2) received in the course of employment, and (3) resulting from that employment. Syl. Pt. 1, *Barnett v. State Workmens' Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). Also, "[i]n determining whether an injury resulted from a claimant's employment, a causal connection between the injury and employment must be shown to have existed." Syl. Pt. 3, *Emmel v. State Comp. Dir.*, 150 W. Va. 277, 145 S.E.2d 29 (1965).

2

Mr. Moore worked in the underground coal mining industry for approximately eight years. During that time, his job duties required him to operate heavy underground equipment including a jackhammer and a roof bolter. Mr. Moore reported that he had to continuously push, pull, and lift over fifty pounds, and perform tasks requiring him to bend and rotate his wrists using firm grip strength.

There are two expert medical opinions in the record. The first is from Dr. Michael Kominsky, who performed an electromyography ("EMG") study and a nerve conduction ("NCS") study on Mr. Moore. According to Dr. Kominsky, these studies revealed evidence of median nerve neuropathy of the right and left wrists affecting sensory fibers and motor fibers, which Dr. Kominsky found to be consistent with bilateral CTS. Additionally, Dr. Kominsky noted that (1) Mr. Moore worked in the mining industry for eight years; (2) over the last two or three years, Mr. Moore developed numbness and tingling in both hands and started to lose grip strength in the right hand; (3) the numbness and tingling progressed and started to interfere with his daily activities, including essential work tasks; and (4) the numbness and tingling were present throughout most of the day and night. Dr. Kominsky specifically cited Mr. Moore's use of high impact vibrating tools, which caused extensive damage to his hands and wrists, and opined that these work activities caused extensive damage to Mr. Moore's median nerve, resulting in numbness, tingling, and weakness. Based on these detailed findings following the EMG/NCS studies, Dr. Kominsky's opinion within a reasonable degree of medical certainty was that Mr. Moore's occupational environment was directly responsible for and related to his bilateral CTS.

The second expert medical opinion in the record is from an independent medical evaluation performed by Dr. Austin Nabet. Dr. Nabet opined that Mr. Moore's bilateral CTS was not due to occupational exposure. Instead, Dr. Nabet found that the CTS is more likely due to the fact that Mr. Moore has diabetes. Dr. Nabet noted that diabetes is one of the strongest risk factors for the development of CTS.

The Workers' Compensation Board of Review ("BOR") concluded that Dr. Nabet's medical opinion was more persuasive than Dr. Kominsky's, in large part because Dr. Kominsky did not discuss Mr. Moore's diabetes.[1] Seizing on this point, the BOR noted that diabetes is among the "confounding conditions" that produce or contribute to CTS listed in West Virginia Code of State Rules § 85-20-41.4. *See* W. Va. Code State R. § 85-20-41.4 ("Confounding Conditions. Medical conditions frequently produce or contribute to CTS. Recognition of these conditions is important for good outcomes. Diabetes mellitus . . . can precipitate CTS symptoms."). However, the CSR relied upon by the BOR also provides that "[a]wkward wrist positioning, vibratory tools, significant grip force, and high force of repetitive manual movements have all been shown to contribute to CTS." W. Va. Code State R. § 85-20-41.5. As Dr. Kominsky noted, Mr. Moore's job duties during his eight years in the underground mining industry included the use of high impact vibrating tools that caused extensive vibration of his hands and wrists. Dr. Kominsky found that these activities damaged Mr. Moore's median nerve resulting in numbness, tingling, and weakness.

---

[1] The ICA affirmed the BOR's order. *See Moore v. United Coal Co., LLC*, No. 25-ICA-137, 2025 WL 2781461 (W. Va. Ct. App. Sept. 30, 2025) (memorandum decision).

3

In light of the foregoing, it is clear that both medical opinions in the record have some support. Dr. Nabet correctly found that diabetes can contribute to CTS, while Dr. Kominsky correctly found that Mr. Moore's work activities have "all been shown to contribute to CTS." W. Va. Code State R. § 85-20-41.5. Therefore, I believe that the two medical opinions in the record were of equal weight. When that is the case, the factfinder must resolve the issue in the claimant's favor according to West Virginia Code § 23-4-1g(a), which provides that the

> resolution of any issue raised in administering this chapter shall be based on a weighing of all evidence pertaining to the issue and a finding that a preponderance of the evidence supports the chosen manner of resolution. The process of weighing evidence shall include, but not be limited to, an assessment of the relevance, credibility, materiality and reliability that the evidence possesses in the context of the issue presented. Under no circumstances will an issue be resolved by allowing certain evidence to be dispositive simply because it is reliable and is most favorable to a party's interests or position. If, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted.

Mr. Moore worked in the underground mining industry for eight years and performed tasks with high impact vibrating tools during that time that have been shown to contribute to CTS. Denying his claim because he also has diabetes is a harsh outcome that I do not believe is in keeping with the purpose of our workmen's compensation law. Therefore, I respectfully dissent from the majority's decision.